UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY WASHINGTON,


                              Plaintiff,

                                                            DECISION AND ORDER

                                                            11-CV-6176L


              v.

LIEUTENANT DONAHUE,
CORRECTIONAL OFFICER S. EVERTTS,
CORRECTIONAL OFFICER S. WATERS,
CORRECTIONAL OFFICER R. DEMING,
CORRECTIONAL OFFICER W. FAUCETT,


                              Defendants.

_____


## **INTRODUCTION**

        Plaintiff Anthony Washington ("plaintiff"), proceeding *pro se*, brings this action against

employees and officials of Southport Correctional Facility ("Southport").   A number of

plaintiff's claims have already been dismissed by this Court.  (Dkt. #12).  In his surviving claims,

plaintiff alleges pursuant to 42 U.S.C. §1983 that defendants Evertts, Deming, Faucett and

Waters subjected him to unlawful retaliation in violation of the First Amendment of the United

States Constitution, and that defendant hearing officer Donahue deprived him of his

constitutional right to due process.   (Dkt. #1, #12).   He seeks compensatory and punitive

damages.  (Dkt. #1).

The defendants now move for summary judgment dismissing the remainder of plaintiff's claims, pursuant to Fed. R. Civ. Proc. 56.  (Dkt. #22).  For the reasons set forth below, that motion is granted, and the complaint is dismissed.

## DISCUSSION

### I.   Summary Judgment

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999).  However, "proceeding *pro se* does not otherwise relieve [an opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003).  Those requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

### II.   Plaintiff's Retaliation Claims

In order to prove a First Amendment retaliation claim under Section 1983, a prisoner must show that: (1) he engaged in protected speech or activity; (2) the defendant took adverse action against him; and (3) there was a causal connection between the protected speech or activity and the adverse action. *See Espinal v. Goord*, 554 F.3d 216, 227 (2d Cir. 2009).  An adverse action is "conduct that would deter a similarly situated individual of ordinary firmness

from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (internal quotation marks omitted).   To show retaliation, a plaintiff must demonstrate that constitutionally protected conduct was a substantial or motivating factor for a prison official's adverse action.  *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).   Although temporal proximity is often relied upon for this purpose, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," and courts are therefore free to draw permissible inferences based upon the "context of particular cases." *Espinal*, 554 F.3d 216 at 228.  Nonetheless, courts are cautioned to approach prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted).  As such, courts "have consistently required some . . . evidence of retaliatory animus [greater than temporal proximity alone] before permitting a prisoner to proceed to trial on a retaliation claim."  *Faulk v. Fisher*, 2013 U.S. App. LEXIS 23372 at *4 (2d Cir. 2013) (unpublished opinion).

It is undisputed that the plaintiff engaged in the protected activity of pursuing multiple grievances against corrections officers at Southport.  *See generally Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (pursuit of grievances is an activity that Section 1983 was meant to protect).  It is equally undisputed that disciplinary write-ups may comprise adverse actions, that is, "conduct that would deter a similarly situated individual" from exercising his constitutional rights.  *Gill*, 389 F.3d 379 at 381.

It is well settled that temporal proximity between protected conduct and an adverse action, is insufficient to prove retaliatory animus, standing alone.  However, where, as here, the alleged adverse action consists of disciplinary write-ups, courts have concluded that temporal proximity may provide sufficient evidence of retaliation to withstand summary judgment, where it is combined with evidence that the officers who authored the write-ups knew of the inmate's protected conduct, as well as evidence that the inmate had a prior record of good behavior, or that the misbehavior reports were later dismissed or successfully appealed.  *See generally Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (plaintiff met his burden to prove retaliatory motive through evidence relating to the temporal proximity between protected activity and disciplinary charges which were later reversed on appeal as unfounded).  *See also Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995) (summary judgment is inappropriate where inmate offers circumstantial evidence of retaliation consisting of temporal proximity between protected activity and allegedly-false disciplinary charges, prior good behavior, and alleged admissions of retaliatory by the defendant).  *Accord Faulk*, 2013 U.S. App. LEXIS 23372 at *6 (district court's grant of summary judgment dismissing inmate's retaliation claims for failure to produce sufficient evidence of retaliatory evidence is affirmed, notwithstanding undisputed evidence that inmate had an "excellent" disciplinary record, filed a successful grievance, and was issued two misbehavior reports the next day, because there is no evidence that the officers who issued the misbehavior reports were aware of the grievance).

Initially, there is evidence of temporal proximity with respect to only two of the defendants, Evertts and Deming.  Plaintiff alleges that after he filed a grievance against a supervisor on April 10, 2008, Evertts, who allegedly made comments to plaintiff indicating that he knew about the grievance and was angry about it, issued a false misbehavior report against

him the next day.  Plaintiff also alleges that Deming verbally threatened him on July 8, 2008, just seven days after he had filed a grievance accusing Deming of harassment.[1]  Plaintiff's claims against Waters and Faucett are more attenuated: he alleges that Waters and Faucett filed a false misbehavior report on August 17, 2008 – and speculates that it, too was motivated by desire to retaliate against him for the July 1, 2008 grievance against Deming, some six weeks earlier. Plaintiff's allegations that each of the defendant officers made verbal comments to plaintiff which acknowledged and/or criticized his history of filing of grievances (plaintiff apparently exhausted more than 100 grievances during one two-year period alone), at the very least raises a question of fact as to whether the defendant officers were aware of plaintiff's protected conduct.

Nonetheless, regardless of the temporal proximity between plaintiff's grievances and the disciplinary write-ups about which he complains (a proximity which would likely have been inevitable at any point during plaintiff's incarceration, given the high frequency with which plaintiff filed grievances, and the high frequency with which he was disciplined), and the defendant officers' alleged knowledge of plaintiff's grievances, there is no evidence that plaintiff ever enjoyed a good disciplinary record, or that the disciplinary reports that the defendants filed against him were unsubstantiated.  Plaintiff concedes that he was found guilty of the charges contained in all twenty misbehavior reports made against him during his nineteen-year incarceration (and was apparently unsuccessful with respect to those he appealed), and admits his guilt as to six of the incidents of misconduct with which he was charged.  (Dkt. #27 at ¶19). Absent evidence of an "excellent" disciplinary history or the termination of disciplinary proceedings in plaintiff's favor, and in light of "the ease with which prisoner retaliation claims

---

1   The Court assumes, *arguendo*, that Deming's alleged verbal threats to assault plaintiff, to make false charges against him, and/or arrange for others to assault him, are sufficiently severe to constitute an adverse action.

could be fabricated," the Court is constrained to conclude that under the circumstances presented, the record lacks sufficient evidence of a retaliatory motive to defeat a motion for summary judgment. *Faulk*, 2013 U.S. App. LEXIS 23372 at *5. Plaintiff's claims of retaliation are dismissed.

### III.    Plaintiff's Due Process Claim

Plaintiff alleges that fourteen out of the twenty misbehavior reports filed against him during his incarceration were false, but that he was adjudged guilty of the associated charges because the hearing officers were not impartial, and believed the testimony of corrections officers over that of inmates.  (Dkt. #27 at ¶18).  However, plaintiff has not produced any transcripts or other evidence to suggest that the "discipline decision[s which resulted from those hearings] lacked 'some basis' in reliable evidence," *Supt. v. Hill*, 472 U.S. 445, 456 (1985), or that he was otherwise deprived of a "fair opportunity to refute the charges." *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986).  With regard to plaintiff's claim of hearing officer bias, plaintiff contends that on September 15, 2008, while defendant Donahue was presiding over a disciplinary hearing concerning plaintiff, Donahue called plaintiff a "monkey," and warned him that "they" were planning "more retaliation" against plaintiff.

There is no other evidence to corroborate plaintiff's account of Donahue's remarks, and plaintiff concedes that he never raised Donahue's alleged comments in his initial appeal of the guilty finding that followed the September 15, 2008 hearing.  There is no evidence that Donahue's finding of guilty lacked an evidentiary basis.  Furthermore, the discipline that resulted, consisting of 30 days in keeplock, is not sufficiently significant to trigger a liberty interest of constitutional proportions. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (30 days in disciplinary segregation does not comprise a constitutionally-protectable liberty interest);

*Aguirre v. Kendra*, 2015 U.S. Dist. LEXIS 111828 at *25 (W.D.N.Y. 2015) ("a prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law").  Plaintiff's due process claim is therefore dismissed.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact, and that defendants are entitled to judgment as a matter of law.  Accordingly, defendants' motion for summary judgment dismissing the complaint (Dkt. #22) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
     November 30, 2015.